## IN THE UNITED STATES DISTRICT COURT FOR
## THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RICKY M. PATTERSON, | ) | Civil Action No.: |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| PRISON HEALTH SERVICES, INC., | ) | |
| c/o CT CORPORATION SYSTEMS; | ) | |
| MARY COMER, PA-C; | ) | **JURY TRIAL DEMANDED** |
| BYUNGHAK JIN, M.D., | ) | |
| c/o STATE CORRECTIONAL | ) | |
| INSTITUTE AT GREENE, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

This is a medical professional liability action. Plaintiff, Ricky M. Patterson suffered a gross delay in diagnosis of his Classic Hodgkin's Lymphoma cancer because the defendants ignored Plaintiff's physical findings, symptoms and complaints. Plaintiff sues the Defendants under State law theories and for Federal civil rights violations.

## PARTIES AND BACKGROUND

1.    Plaintiff, Ricky M. Patterson ("Plaintiff") is an adult individual resident of Pennsylvania currently incarcerated in the State Correctional Institute at Pittsburgh with inmate number KK8066.

2.    Defendant Prison Health Services, Inc. ("PHS") is a corporation organized under the laws of Tennessee with its principal place of business located at 105 West Park Drive, Brentwood, Tennessee 37027, with a registered address for service of process

within the Commonwealth at CT Corporation Systems, 1635 Market Street, Philadelphia, PA 19103. It is a citizen of Tennessee.

3.     Upon information and belief, Mary Comer, PA-C ("PA Comer") is an adult individual and a citizen of the Commonwealth of Pennsylvania. At all relevant times, Ms. Comer was employed as a physician's assistant at State Correctional Institute at Greene ("SCI Greene"), who by virtue of her authority was vested with the responsibility of providing medical care to inmates within the prison where Plaintiff was in custody.

4.     Upon information and belief, Byunghak Jin, M.D. ("Dr. Jin") is an adult individual and a citizen of the Commonwealth of Pennsylvania. At all relevant times, Dr. Jin was employed as a physician at SCI Greene, who by virtue of his authority was vested with the responsibility of providing medical care to inmates within the prison where Plaintiff was in custody.

## JURISDICTION AND VENUE

5.     This court has jurisdiction of plaintiffs federal law claims pursuant to 28 U.S.C. §§1331 and 1343(a)(3), and jurisdiction over plaintiffs state law claims pursuant to principals of pendant and ancillary jurisdiction.

6.     Venue is proper in this district pursuant to 28 U.S.C. §1391 because the cause of action upon which the complaint is based arose in Allegheny County, Pennsylvania, which is in the Western District of Pennsylvania.

## OPERATIVE FACTS

7.     At all relevant times herein, Plaintiff was an inmate incarcerated in the SCI-Greene.

8.      At all relevant times, the Pennsylvania Department of Corrections ("DOC") was responsible for all prisoners incarcerated in SCI Greene and, as part of that responsibility, was responsible for the medical care and treatment of inmates, including Plaintiff. By contract, between or among the DOC and/or PHS, PHS undertook responsibility for the medical care and treatment of inmates at SCI Greene.

9.      At all relevant times, PHS was obligated to perform thorough workup and adequate medical examinations of all inmates upon inmate request of treatment by sick call. The purpose of these workups and examinations is to discover any potential or existing serious medical condition(s) and to provide any and all necessary medical treatment for such condition(s).

10.     On February 14, 2014, Plaintiff sought medical treatment via sick call and was seen by PA Comer.

11.     Plaintiff expressed a fear that he had cancer because over the past 2-3 months he had developed a significant lump in his neck accompanied by new onset night sweats.

12.     On examination, PA Comer confirmed the presence of an enlarged 2 cm left-sided supraclavicular lymph node on Plaintiff's neck.

13.     In response, PA Comer ordered a chest x-ray, bloodwork and directed Plaintiff to return in two weeks for follow up – there was no mention of a biopsy.

14.     Defendants knew or should have known that Plaintiff's symptoms were highly suggestive of Lymphoma and required prompt, definitive workup and diagnosis via needle or excisional biopsy.

15.     On February 26, 2014, Plaintiff inquired about his chest x-ray and was advised that the results were within normal limits.

3

16.     Defendants knew or should have known that the absence of infection in a patient with Plaintiff's symptoms was highly suggestive of Lymphoma and required prompt, definitive work up and diagnosis via needle or excisional biopsy.

17.     Defendants knew or should have known that a delay in treatment of Lymphoma increased the risk of worsened morbidity and premature mortality.

18.     Two days later on February 28, 2014, Plaintiff was seen by Dr. Jin who found that Plaintiff now had a *second* enlarged posterior cervical lymph node, assessed as an, "enlarged inferior posterior cervical nodes" (which is a finding not a diagnosis).

19.     In fact, at no time relevant hereto, did Dr. Jin ever perform and/or document a differential diagnosis and/or develop a working diagnosis to explain Plaintiff's symptoms.

20.     Dr. Jin knew or should have known that Plaintiff's symptoms were highly suggestive of Lymphoma and demanded a needle or excisional biopsy for diagnosis.

21.     Dr. Jin chose not to discuss or recommend Plaintiff have a needle or excisional biopsy, which would have provided a timely diagnosis.

22.     Instead, Dr. Jin simply ordered Plaintiff to follow up in six (6) months and ignored Plaintiff's need for work up and diagnosis as to the cause of Plaintiff's unexplained lymphadenopathy in the absence of infection, night sweats and presence of a second newly enlarged lymph node.

23.     Six months later, on September 3, 2014, Plaintiff followed Dr. Jin's orders and followed up with PHS where he was seen again by PA Comer.

24.     PA Comer noted the continued presence of enlarged posterior cervical nodes, one of which was visibly enlarged, and that Plaintiff continued to experience night seats.

25.     Instead of ordering a fine needle biopsy or excisional biopsy which would have provided definitive diagnosis of Plaintiff's Lymphoma, PA Comer ordered Plaintiff undergo a comprehensive metabolic panel complete blood count and follow up in one month.

26.     PA Comer knew she had no explanation whatsoever for Plaintiff's persistent lymphadenopathy and night sweats and that only a biopsy could definitely rule out or in the most deadly cause of Plaintiff's symptoms – Lymphoma.

27.     Despite this knowledge, she chose not to order or recommend that Plaintiff undergo a biopsy.

28.     One month later, on October 3, 2014, Plaintiff returned to the infirmary where he was seen for the first and only time by physician's assistant Esther Mattes ("PA Mattes").

29.     PA Mattes observed the two enlarged lymph nodes previously documented by Dr. Jin and PA Comer as well as mildly enlarged lymph nodes on Plaintiff's right posterior chain.

30.     Resultantly, PA Mattes entered an assessment of, "benign lymphadenopathy vs malignant cause," and *correctly* ordered Plaintiff to see Dr. Jin in three (3) weeks for, "lymph node excision and pathology."

31.     On October 24, 2014, Plaintiff followed PA Mattes' order and followed up with Dr. Jin in the infirmary.

32.     Dr. Jin noted continued lymphadenopathy but chose to *ignore* Assistant Mattes' order for an excisional biopsy, undertook no additional workup and instead further delayed treatment by simply ordering Plaintiff to follow up in six weeks.

33.     On December 5, 2014, Dr. Jin again saw Plaintiff and noted that there were no signs of infection and that one of the lymph nodes on Plaintiff's left posterior cervical chain was now 1.5 x 2 cm in size.

34.     Again, Dr. Jin ignored the order of PA Mattes from two months prior that Plaintiff undergo an excisional biopsy and instead simply ordered Plaintiff to follow up in six weeks.

35.     On April 14, 2015, Dr. Jin again saw Plaintiff, noted the presence of two enlarged lymph nodes, ordered a complete blood count and follow up without a timeframe.

36.     On June 10, 2015, Dr. Jin saw Plaintiff and again observed profound lymphadenopathy.

37.     Dr. Jin noted that he discussed with Plaintiff the performance of a lymph node excision in two weeks.

38.     On June 24, 2015, Plaintiff was scheduled both for an endodontic dental procedure and follow up with Dr. Jin.

39.     Instead of seeing Plaintiff as scheduled, Dr. Jin visited Plaintiff in the dentist office where he did not examine Plaintiff, did not perform an excisional biopsy, cancelled his appointment for that day and scheduled Plaintiff to return in three to four months for follow up.

40.     A month later on August 31, 2015, Plaintiff placed a sick call due to his swollen lymph nodes.

41.     Plaintiff was seen by CRNP, John Beabout, who found that one of Plaintiff's lymph nodes had grown to 2-3 cm accompanied by other swollen lymph node on Plaintiff's neck bilaterally.

42.     Plaintiff was instructed to simply follow up with Dr. Jin as previously ordered.

43.     Plaintiff returned to see Dr. Jin on September 25, 2015 where he complained about his swollen lymph nodes and that he had begun to lose weight.

44.     Once again, Dr. Jin merely assessed Plaintiff as having lymphadenopathy and planned to consider a lymph node biopsy in the future.

45.     Plaintiff returned to see Dr. Jin five days later on September 30, 2015, where Dr. Jin opted to wait to learn of the results of a chest x-ray and blood work.

46.     On October 1, 2015, more than one and a half years since Plaintiff had sought treatment for swollen lymph nodes and night sweats in the absence of infection, Dr. Jin suddenly opted to perform a biopsy of Plaintiff's swollen lymph node.

47.     On October 15, 2015, Dr. Jin learned that Plaintiff's lymph node was Classic Hodgkin's Lymphoma with differentiated cell type.

48.     Shortly thereafter, Plaintiff learned that due to the gross delay in diagnosis herein described, his cancer had metastasized, was Stage IV and his chance of short term survival was far less than it would have been had he been timely diagnosed more than a year earlier.

49.     The acts of the Defendants herein were undertaken with the purpose and the intent of depriving Plaintiff of his rights under the Eighth and Fourteenth Amendments to the United States Constitution and his rights to Due Process and to be free from cruel and unusual punishment.

50.     PHS, at all times relevant hereto, had a policy and/or custom of acquiescing in unconstitutional practices in these circumstances which thoroughly corrupted the medical system within SCI-Greene and allowed these constitutional abuses to occur as alleged herein.

51.     Furthermore, PHS, at all times relevant hereto, had a policy and/or custom of inadequate response to, and investigation of, citizen complaints and ineffective and inadequate discipline of offending officers/officials and medical staff which thoroughly corrupted the medical system within SCI-Greene and allowed the constitutional abuses to occur as alleged herein.

52.     In addition, by failing to adequately train and/or supervise the officers/officials and medical staff named herein, PHS enhanced and created the danger that Plaintiff would suffer the harm he suffered, and the risk of these constitutional violations suffered by the Plaintiff would have been eliminated, or minimized, by proper training and supervision.

53.     All of the Defendants knew or should have known that they lacked the competence necessary for the performance of their duty to provide care and treatment for inmates' medical needs, and were recklessly indifferent in failing to undertake these responsibilities, as well as intentionally indifferent in failing to perform their responsibilities to maintain and preserve Plaintiff's health.

54.     Defendants did nothing to adequately alter the grossly inadequate medical care being administered at SCI-Greene. They allowed the prison medical facility to operate in a manner which perpetuated grossly inappropriate medical care.

55.    The above alleged acts of all Defendants and their agents, and a complete failure to provide any positive medical treatment for Plaintiff as he suffered a severe and preventable injury which resulted and will continue to result in pain and suffering, constitute cruel and unusual punishment and violate the Eighth and Fourteenth Amendments to the United States Constitution.

56.    The above alleged acts of Defendants and their agents, coupled with the complete failure of Defendants to provide any positive medical treatment for Plaintiff, constitute a course of medical care so clearly inadequate as to amount to the refusal to provide medical care.   Such acts were so blatantly inappropriate as to evidence intentional maltreatment resulting in the deprivation of Plaintiff's quality of life in violation of the Fourteenth and Eighth Amendments to the United States Constitution.

57.    The above alleged acts of the Defendants and their agents were of a malicious and intentional nature and manifest a deliberate indifference to requests for essential medical treatment.

## CLAIMS AGAINST STATE ACTORS

### COUNT I
### Ricky Patterson v. Prison Health Services, Inc.;
### Byunghak Jin, M.D.; and Mary Comer

#### Violations of 42 U.S.C. §1983

58.    All other paragraphs of this Complaint are incorporated herein by reference.

59.    Plaintiff sues Dr. Jin and PA Comer in their individual capacity only.

60.    At all times relevant hereto, PHS, Dr. Jin and PA Comer acted under color of state law.

9

61.     PHS, Dr. Jin and PA Comer were deliberately indifferent to Plaintiff's serious medical needs.

62.     By their deliberate indifference to Plaintiff's serous medical needs, PHS, Dr. Jin and PA Comer deprived Plaintiff of his right, guaranteed under the Eighth Amendment to the U.S. Constitution and made applicable to the states through the Fourteenth Amendment, to be free from cruel and unusual punishment.

WHEREFORE, Plaintiff Ricky Patterson, demands compensatory and punitive damages against defendants PHS, Dr. Jin and PA Comer, jointly and severally for violations of 42 U.S.C. §1983, plus costs, interest, attorney's fees, delay damages, and any and all other damages the court and/or fact finder deems appropriate.

## CLAIMS AGAINST PRISON HEALTH SERVICES

### COUNT II
### Ricky Patterson v. Prison Health Services, Inc.;
### Byunghak Jin, M.D.; and Mary Comer

### Negligence

63.     All other paragraphs of this Complaint are incorporated herein by reference.

64.     Defendant PHS, Dr. Jin and PA Comer were under a duty to perform a complete workup of all inmates complaining of serious but undiagnosed medical symptoms and timely diagnose and treat serious medical conditions and needs and to render adequate medical assistance to all inmates.

65.     Defendant PHS breached these duties in the following particular respects:

        a.  In failing to ever perform a complete history and physical exam of Plaintiff;

b.  In failing to ever apply the principles of differential diagnosis in their treatment of Plaintiff;

c.  In choosing to disregard the order and or recommendation of PA Mattes that Plaintiff undergo a biopsy of his enlarged lymph node;

d.  In failing to take any steps to rule out that Plaintiff was suffering from a malignant cancer;

e.  In deliberately delaying the workup, diagnosis and treatment of Plaintiff's Lymphoma;

f.  In placing the cost of medical treatment ahead of complete and proper treatment of inmates in need of medical care for serious medical conditions, including Plaintiff;

g.  In failing to undertake any meaningful workup of Plaintiff when Plaintiff exhibited obvious and concerning symptoms of Lymphoma;

h.  In failing to perform any meaningful diagnostic tests upon Plaintiff which would have timely revealed his Lymphoma;

i.  In failing to follow through on the orders and recommendations of other prison health providers, specifically Nurse Mattes, who had followed the standard of care and correctly recommended and/or ordered Plaintiff undergo a biopsy which would have provided definitive diagnosis;

j.  In failing to give any meaningful consideration of Plaintiff's physical findings and symptoms, which were highly suspicious of Lymphoma;

k.  In failing to timely diagnose and treat Plaintiff's Lymphoma; and

l.  In choosing to order excessively long follow up appointments which guaranteed meaningful delay in the diagnosis and treatment of Plaintiff's Lymphoma.

66.  As a direct and proximate result of the negligence of Defendant PHS, Plaintiff was denied appropriate medical treatment which caused a significant delay in the diagnosis and treatment of his Lymphoma and in turn severely diminished his near term chances of survival.

67.    These acts were also intentional, willful, malicious and/or intended to cause serious injury to Plaintiff.

WHEREFORE, Plaintiff Ricky Patterson, demands compensatory and punitive damages against defendants PHS, Dr. Jin and PA Comer, jointly and severally plus costs, interest, attorney's fees, delay damages, and any and all other damages the court and/or fact finder deems appropriate.


Respectfully submitted,

MEYERS EVANS LUPETIN & UNATIN, LLC


By: _____
　　　Brendan B. Lupetin, Esquire
　　　PA I.D. #201164

　　　The Gulf Tower, Suite 3200
　　　707 Grant Street
　　　Pittsburgh, PA 15219
　　　(412) 281-4100
　　　blupetin@meyersmedmal.com

　　　Attorneys for Plaintiff